HONORABLE RONALD B. LEIGHTON

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT TACOMA

MICHAEL KURTZ,

    Plaintiff,

v.

CAROLYN COLVIN,

    Defendant.

CASE NO. C14-5638 RBL

ORDER AFFIRMING DENIAL OF BENEFITS

Michael Kurtz claims that he has been disabled since at least February 9, 2011, due to a variety of ailments. Kurtz emphasizes primarily that he suffers from an involuntary tremor, limitations on sitting, and slowed mental processing speed. He also claims arthritis in his left ankle, degenerative disc disease, explosive disorder, antisocial personality disorder, a learning disorder, a speech impediment, diabetes, and possible alcohol dependency[1].

The ALJ determined that Kurtz's Residual Function Capacity permitted him to do light work, standing or walking two hours per day, with no restrictions on sitting. The RFC included a variety of limitations on work requiring judgment, public interaction, complex instruction,

---

[1] Kurtz claimed he had an impairing alcohol abuse problem, but the nurse practitioner, Bennett, claimed he did not.

writing, and math.  Based on the Vocational Expert's testimony, the ALJ found that Kurtz could not perform his past work, but he could perform work that was available in significant numbers in the national economy. Tr. 24.  He therefore determined that Kurtz was not disabled, and that determination is the Commissioner's for purposes of this action. Tr. 31.  The ALJ specifically discounted Kurtz's own testimony about the intensity, persistence, and limiting effects of his symptoms or ailments as not credible.

Kurtz claims that the ALJ's RFC determination was error, because he did not discuss or analyze the evidence of Kurtz's limited ability to sit, and did not "logically" address the effects of his tremor and his slow processing speed on his ability to work.  He argues that the adverse credibility determination was error, and did not relate to his claimed limitations. He claims that, at step five, the ALJ should have determined that he could not do work available in the national economy, and that Kurtz was in fact disabled.

This Court must uphold the Commissioner's determination that a claimant is not disabled, if the Commissioner applied "proper legal standards," and her determination is supported by "substantial evidence in the record as a whole." *Hoffman v. Heckler*, 785 F.2d 1423, 1425 (9th Cir. 1986); *see also Batson v. Commissioner of Social Security Admin.*, 359 F.3d 1190, 1193 (9th Cir. 2004); *Carr v. Sullivan*, 772 F.Supp. 522, 525 (E.D. Wash. 1991) ("A decision supported by substantial evidence will, nevertheless, be set aside if the proper legal standards were not applied in weighing the evidence and making the decision.") (*citing Brawner v. Secretary of Health and Human Services*, 839 F.2d 432, 433 (9th Cir. 1987)).

Evidence is "substantial" if a reasonable mind might accept it as adequate to support a conclusion. *Richardson v. Perales*, 402 U.S. 389, 401 (1971) (citation omitted); *see also Batson*, 359 F.3d at 1193 ("The Commissioner's findings are upheld if supported by inferences

reasonably drawn from the record."). The substantial evidence test requires that the reviewing court determine whether the Commissioner's decision is "supported by more than a scintilla of evidence, although less than a preponderance of the evidence is required." *Sorenson v. Weinberger*, 514 F.2d 1112, 1119 n.10 (9th Cir. 1975). Furthermore, if the evidence admits of more than one rational interpretation," the Commissioner's decision must be upheld. *Allen v. Heckler*, 749 F.2d 577, 579 (9th Cir. 1984) ("Where there is conflicting evidence sufficient to support either outcome, we must affirm the decision actually made.") (internal citation omitted).

The ALJ must provide "clear and convincing" reasons for rejecting the uncontradicted opinion of a treating or examining physician. *Lester v. Chater*, 81 F.3d 821, 830 (9th Cir. 1996). Even when a treating or examining physician's opinion is contradicted, that opinion can be rejected for "specific and legitimate reasons that are supported by substantial evidence in the record." *Id.* at 830-31. The Ninth Circuit has stated that the ALJ must similarly provide specific, clear, and convincing reasons[2] for rejecting the claimants own testimony. *See Burrell v. Colvin*, 775 F.3d 1133, 1136-37 (9th Cir. 2014).

If this Court reverses an ALJ's decision, "the proper course . . . is to remand to the agency for additional investigation or explanation." *Benecke v. Barnhart,* 379 F.3d 587, 595 (9th Cir. 2004).

The Commissioner argues that the ALJ gave specific, clear and convincing reasons for determining that Kurtz was not credible:  Kurtz admitted that he routinely failed to follow his

---

[2] The Commissioner points out that this high standard is contrary to the deferential "substantial evidence" standard of 42 U.S.C. §405(g); *see also Molina v. Astrue*, 674 F.3d 1104, 1111 (9th Cir. 2012) ("Even when the evidence is susceptible to more than one rational interpretation, we must uphold the ALJ's findings if they are supported by inferences reasonably drawn from the record."). Nevertheless, she claims that the ALJ's determination in this case meets even the higher standard.

providers' courses of treatment [*see* Tr. 25, 267, 373, 427, 454, and 459]; he exaggerated his symptoms and self-limited. One of his doctors opined that Kurtz "is too bright and plans too much during the exam to have done so poorly on his IQ testing." Tr. 462. The Commissioner points out that Kurtz's admitted daily activities are inconsistent with his claimed limitations, and that Kurtz actually *did* work during the time he claimed he was disabled and could *not* work. The Commissioner also argues that the objective medical evidence supports the ALJ's determination that Kurtz exaggerated and self-limited, and, in turn, the conclusion that he was not credible.

The Commissioner also claims that the ALJ's resolution of other, competing medical information is supported by substantial evidence, including the effect of his limitations on his RFC, and the determination that he was not disabled at step five.

Kurtz replies that the ALJ's "not disabled" determination was not supported by substantial evidence, or was not adequately explained, in three specific areas.

**1.  Tremor.**

Kurtz claims that the ALJ's RFC determination was erroneous with respect to the effects of his involuntary tremor, because he found Kurtz's description of it to be not credible, and thus discounted its effect on Kurtz's ability to work. He claims that the ALJ's credibility determination generally was not related to his description of his tremor, and that the ALJ therefore did not clearly or convincingly explain why this claimed deficiency was not credible.

The Court disagrees. The ALJ was presented with a wide variety of claimed ailments. All were discussed, and Kurtz's lack of credibility about one of them logically could affect his credibility about another, particularly where, as here, there were several documented misstatements or exaggerations. More importantly, the ALJ did specifically describe and explain

why he determined that the tremor was not disabling, and why Kurtz's claim to the contrary was not credible; the tremor was infrequent and controllable:

> Concerning the claimant's left ankle pain, the record states the issue was "resolved," with a negative x-ray. Exhibit 1F/4. Similarly, the claimant's tremor occurred only from "time to time" and the claimant was able to stop the tremor by contracting his arm muscles. His treating provider noted that no tremor occurred when the claimant's arm rested on his lap and it stopped "at will" by concentrating. Exhibit 6F/9, 12, 17.

[Tr. 24]. The ALJ's determination on this point was logically explained, legally correct, and supported by substantial evidence. The ALJ's determination that Kurtz's tremor was not disabling was not error.

**2.   Sitting.**

Kurtz claims that he ALJ's RFC determination (that Kurtz could do "light" work) was error because it did not adequately address his claim that he had limitations on his ability to sit during the work day. Specifically, he claims the ALJ failed to adopt nurse practitioner[3] Bennett's opinion that Kurtz's back and knee pain would preclude him from sitting or standing for "too long," and Kurtz's wife's claim that he can sit for only an hour at a time. Kurtz claims that although there was contrary medical opinion evidence (Dr. Koukol, and also Dr. Seymanski), and the ALJ did give significant weight to Koukol's opinion, he failed to specifically articulate that he was rejecting Bennett's lay testimony in favor of Koukol's. Kurtz claims that his sitting limitations make him unable to work.

It is clear from the record and the context that the ALJ rejected Bennett's (and Kurtz's) claim that Kurtz could not sit, and therefore could not work, in favor of medical (and factual) testimony to the contrary. *See* 20 C.F.R. §414.927(d) (3). Dr. Koukol opined that Kurtz could sit

---

[3] The parties agree that Bennett is not an "acceptable medical source," but disagree on how much weight her opinions should be given.

for six of eight hours, and Kurtz himself admits that he did actually work.  His daily activities are not consistent with his claimed limitations.   Tr. 26.

As the Commissioner points out, the regulations do not require an explicit discussion of each lay witnesses' testimony or the reasons that it is not adopted.  *See Molina v Astrue*, 674 F.3d 1104 at 1114 (9th Cir. 2012).  Nor is she required to address every piece of evidence submitted, allowing the claimant to then focus on a stray comment or claim and obtain remand.  *See Howard ex.rel. Wolff v. Barnhart*, 341 F.3d 1006, 1012 (9th Cir. 2003).  Instead, if the evidence is susceptible to more than one interpretation, the Commissioner's conclusion must be upheld.  *Burch v. Barnhart*, 400 F.3d 676, 679 (9th Cir. 2005).

**3.      Processing Speed.**

Kurtz's third claim is that the ALJ's determination at step five failed to account for the impact of his "fifth percentile" (bottom 5%) processing speed on his ability to work.

But it is also true that Kurtz's IQ was mostly in the "low average" range 89, and that his processing speed was "borderline" at 76.  His other mental acuity scores were higher.  Tr. 352-55.  Seymanksi opined that, as a whole, Kurtz had "the ability to engage in simple, routine tasks and given his ability to understand, reason, concentrate, and memorize he would be able to take instruction of a supervisor."  Tr. 356.  The ALJ gave significant weight to this opinion.  The Commissioner points out that there is no conflict between the testimony and the conclusion in this area, and that the Commissioner incorporated the doctor's assessed limitations into the RFC finding.   She also points out that Seymanski's opinion was supported by other medical professionals (Dr. Comrie, for example, determined that Kurtz "could complete at least simple, repetitive tasks and he was capable of superficial interaction with the public and with co-

workers/supervisors" Tr. 29; Tr. 79-80).  The ALJ's RFC determination accommodated these limitations.  Tr. 24, 29.

Kurtz's "processing speed" disability claim over-emphasizes that one component of his mental abilities.  The ALJ's conclusion that Kurtz was able to learn and follow instructions (consistent with all of the medical opinion testimony) is supported by substantial evidence.  And, again, even if the evidence is susceptible to more than one interpretation, the Commissioner's conclusion must be upheld.  *Burch v. Barnhart*, 400 F.3d 676, 679 (9th Cir. 2005).

The ALJ's determination that Kurtz is not disabled was not error, and it is AFFIRMED.  .
IT IS SO ORDERED.

Dated this 10th day of August, 2015.

Ronald B. Leighton
United States District Judge